UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-293 (JWB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| MOESHEA ISIAH HART, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing. The United States recommends a sentence of 42 months' imprisonment, constituting the middle of the applicable Guidelines range of 37 to 46 months, as a sentence that is sufficient but not greater than necessary to comply with the Section 3553(a) sentencing factors.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

The United States agrees with, and incorporates by reference, the facts from the "Offense Conduct" section of the PSR, ¶¶ 7-13, as well as the facts from the Plea Agreement, ECF 47, ¶ 2.

On February 15, 2023, at approximately 4:30 p.m., Saint Paul Police Officers responded to a shots-fired 911 call in a residential neighborhood, where witnesses reported hearing automatic gunfire coming from a black Jeep

shooting at and chasing a white vehicle on a residential street.[1]   When responding officers located the suspect Jeep, the vehicle fled police and recklessly led them on a high-speed chase towards downtown Saint Paul, until the Jeep ran a stop sign, crashed into another vehicle, and careened through the entirety of a  (fortunately) unoccupied bar and restaurant, causing extensive damage.





The defendant, who was driving the Jeep, and two others attempted to flee the scene but were arrested by police.   Inside the defendant's

---

[1] The reported intersection of the automatic gunfire (Luella Street North and Wilson Avenue) is surrounded by multiple apartment buildings and within one block of the Sanneh Fields playground.

pants pocket, police located the Jeep's key fob attached to the defendant's house keys. Police learned the Jeep had been stolen from Saint Paul in December 2022.

On the floor of the restaurant, near the driver's side door, police located a loaded Glock 9mm firearm, with an inserted 31-round, high-capacity magazine, and an attached machinegun conversion device, or "switch," enabling it to fire as a fully automatic machinegun with the single pull of the trigger.[2] Eleven 9mm discharged cartridge



casings were located in and around the driver's area of the Jeep and on the floor of the restaurant. Forensic ballistics testing of one randomly selected casing determined it had been fired by the machinegun. Additionally, forensic DNA testing determined that the defendant could not be excluded as a contributor to any of the DNA mixture profiles located on four areas of the machinegun.

In September 2023, a federal grand jury returned an indictment charging the defendant with possession of a machinegun, in violation of 18

---

[2] Police test-fired the machinegun and determined that it fired as a fully automatic machinegun regardless of the position of the switch.

U.S.C. §§ 922(o)(1) and 924(a)(2), which carries a statutory maximum of 10 years' imprisonment. (PSR ¶¶ 1, 89; ECF 16)

In March 2024, the defendant pleaded guilty to the single count in the indictment, pursuant to a plea agreement filed with the Court. (PSR ¶ 2; ECF 46, 47) The government agreed it would not advocate for more than the expected top of the applicable Guidelines range of 46 months, and the defendant agreed he would not advocate for less than the expected bottom of the range of 37 months. (PSR ¶ 3; ECF 47, ¶ 9)

On July 29, 2024, the United States Probation Office issued a final PSR, finding the total offense level to be 21 and criminal history category to be I, resulting in an advisory Guidelines' range of 37 to 46 months' imprisonment, with a supervised-release period of not more than three years. (PSR ¶¶ 29, 36, 90, 93) The Guidelines range determined by the PSR did not differ from that contemplated by the plea agreement. (PSR ¶ 92; ECF 47, ¶ 7.f.)

## ARGUMENT

In accord with the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence

requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence. *United States v. Miller*, 41 F.4th 1019, 1023 (8th Cir. 2022); *United States v. Wickman*, 988 F.3d 1065, 1067 (8th Cir. 2021).

### A.   The Guidelines Calculations

The United States agrees with the calculated total offense level of 21, criminal history category of I, and Guidelines range of 37 to 46 months. The United States respectfully recommends a sentence of 42 months' imprisonment, constituting the middle of the applicable Guidelines range, as a sentence that is sufficient, but not greater than necessary to comport with the § 3553(a) factors.

### B.   The Section 3553(a) Factors

A consideration of the § 3553(a) factors amply warrants a sentence of 42 months' imprisonment.

1.  <u>Nature and Circumstances of the Offense</u>

As summarized above, the defendant committed a drive-by shooting with a 9mm machinegun at another moving vehicle in a densely populated residential neighborhood, within one block of a playground, while driving a stolen vehicle, on a Wednesday winter afternoon around rush hour. When a police squad responding to the 911 shots-fired calls approached, the defendant rapidly took off and led police on a reckless, high-speed chase, eventually driving into downtown Saint Paul, where he ran a stop sign and collided head-on with another vehicle, sending the defendant's stolen vehicle careening through the entirety of a (fortunately) unoccupied bar and restaurant, no doubt causing thousands of dollars of damage. Multiple discharged 9mm casings littered the driver's area of the crashed jeep, and the defendant's machinegun laid just outside the driver's door. The defendant and the two other occupants tried to flee the scene but were quickly arrested by police.

Incredibly and fortunately, no one was seriously hurt or killed by the defendant's wanton, felonious acts. The nature and circumstances of the defendant's brazen, reckless, and extremely dangerous criminal acts warrant a sentence of 42 months' imprisonment.

2.  <u>History and Characteristics of the Defendant</u>

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and

characteristics.  While the defendant, who is only 19 years old, has no criminal history points, the defendant appears to be attempting to make up ground, as he was charged with eight felonies, two gross misdemeanors, and one misdemeanor—beyond his current felony conviction—within a span of only four months, including four separate firearms-related felony offenses and three felony drug offenses (including fentanyl).  (PSR ¶¶ 38-41)  The defendant's penchant for firearms-related criminal offenses dates back to when he was only 16 years old.  (PSR ¶ 32)  His knowledge and familiarity with machineguns is also underscored by his text exchanges with another, wherein he told the person how to install a switch on a ghost gun[3] and sent a video of two males shooting machineguns in a parking lot at night.  (PSR ¶ 13)

The defendant has not exemplified any reticence since being ordered detained, instead incurring five major rule violations while in federal custody, including harassment, false information to jail staff, vulgar and abusive language towards other inmates, staff, and visitors, and possession of contraband, resulting in periods of segregation for up to thirty days.  (PSR ¶ 42)

The defendant has a significant poly-substance abuse history that began when he was only 8 years old, and includes daily consumption of about one pint

---

[3] An unserialized firearm.

per day of Promethazine, one-half pint of liquor, and oxycontin and Xanax. (PSR ¶¶ 66-73)   Additionally, the defendant does not have a high-school diploma and little to no employment history.   It appears that the defendant could benefit from drug and mental-health treatment, as well vocational programming, while incarcerated and while on supervised release.

3.   <u>Needs of Sentencing and Other 3553(a) Factors</u>

A sentence of 42 months is amply warranted by the needs of sentencing and other Section 3553(a) factors.   While certainly mitigating factors exist, such as the defendant's dysfunctional upbringing and living situation, lack of a father-figure during his formative years, his exposure to domestic abuse and violence, and his being subject to physical abuse by his mother and stepfather, the defendant did report that more recently he has developed a close relationship with his mother and has maintained consistent contact with his father.

But aggravating factors also warrant consideration such as the very serious, brazen, and violent nature surrounding the current offense, the defendant's penchant for committing gun-related offenses and victim crimes, his apparent ready access to and use of firearms, his use of, and possession with intent to sell, opioids, and the defendant's unabated felony crime spree in just a few short months. *See Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) ("Congress specifically made general deterrence an appropriate

consideration . . . and [the Eighth Circuit has] described it as 'one of the key purposes of sentencing.'") (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

On balance, a sentence of 42 months would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to avoid sentencing disparities, and to protect the public from further crimes of the defendant.

## <u>CONCLUSION</u>

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 42 months' imprisonment, with three years' supervised release, including conditions that the defendant be subject to search based on reasonable suspicion of contraband or other supervised release violation.  The United States also recommends that the defendant participate in substance-abuse and mental-health programming as well as vocational training while serving his sentence and while on supervised

release, and that he be screened for Re-Entry Court following his release from BOP.

Respectfully submitted,

Dated: <u>August 19, 2024</u>

ANDREW M. LUGER
United States Attorney

<u>/s/ *Benjamin Bejar*</u>
BY: BENJAMIN BEJAR
Attorney ID No. 351131
Assistant United States Attorney
District of Minnesota